IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NOELLE RENEE BOLIN,

                Plaintiff,

v.                                                OPINION and ORDER

ANDREW M. SAUL,                             20-cv-348-jdp
Commissioner of Social Security,

                Defendant.

---

Noelle Renee Bolin seeks judicial review of a final decision of defendant Andrew Saul, Commissioner of the Social Security Administration, finding Bolin not disabled within the meaning of the Social Security Act. Bolin contends that administrative law judge Karen Sayon (ALJ) erred by failing to adequately consider: (1) new evidence that the consulting experts didn't review; (2) objective evidence of Bolin's mental health limitations; and (3) Bolin's subjective complaints.

Bolin has a number of severe impairments that affect her ability to work, and counsel has presented her arguments with admirable care and clarity. But the court is not persuaded that the ALJ erred, so it will affirm the ALJ's decision. The hearing scheduled for February 18, 2021, is cancelled.

## ANALYSIS

Bolin sought benefits based on both physical and mental impairments, alleging disability beginning in 2016 when she was 50 years old. R. 17 and 25.[1] In a February 2019

---

[1] Record cites are to the administrative transcript, located at Dkt. 17.

decision, the ALJ found that Bolin suffered from several severe impairments, including fibromyalgia, back pain from facet joint arthritis, restless leg syndrome, depressive disorder, and generalized anxiety disorder. R. 18. The ALJ ascribed to Bolin the residual functional capacity (RFC) to perform light work with additional physical and mental restrictions. R. 20. Based on the testimony of a vocational expert (VE), the ALJ found that Bolin could not perform her past work, but she was not disabled because she could work in jobs available in the national economy, including as a cleaner or a small parts assembler.

On appeal, the court's role is to determine whether the ALJ's decision is supported by substantial evidence, meaning that the court looks to the administrative record and asks "whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

**A. New evidence**

Bolin says that substantial portions of the record weren't reviewed by consulting physicians Ronald Shaw and Mina Korshidi, and that the unreviewed records included "significant, new and, potentially decisive findings." Dkt. 19, at 7 (quoting *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016)). This evidence included: (1) an April 2016 MRI of Bolin's lumbar spine; (2) a diagnosis for upper airway resistance syndrome (UARS) and chronic obstructive pulmonary disease (COPD); (3) a seizure and a subsequent reduction of the medication that was believed to cause the seizure; and (4) reports that Bolin was experiencing anxiety and depression, leading to an emergency room visit for alcohol intoxication and suicidal

2

thoughts. Bolin says that the ALJ either failed to discuss this new evidence or did so without an adequate basis because there was no medical opinion that considered the importance of the evidence.

### 1. MRI

Bolin cites a March 2016 MRI of her lumbar spine showing that she had "advanced facet arthrosis," R. 511, which is a degenerative spinal condition. Although the consulting physician's opinions are dated after March 2016 (May 2016 and October 2016, R. 70 and 104), Bolin says that neither of them reviewed the MRI, and the commissioner doesn't challenge that assertion.

The ALJ did consider the MRI, but she didn't consider it to be evidence of disability for multiple reasons, including that: (1) a November 2017 progress note described Bolin's lower-back pain as "well controlled"; (2) other medical records described her back pain as "intermittent"; (3) an October 2016 examination showed that Bolin had full lumbar extension, lateral flexion, and rotation, with mildly limited flexion; and (4) Bolin's medical records generally described her as walking with a normal gait. R. 26.

Bolin says that the ALJ wasn't entitled to disregard the MRI without the assistance of medical expert, citing *Akin v. Berryhill*, 887 F.3d 314, 317–18 (7th Cir. 2018), and *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). But in both of those cases the ALJ attempted to *interpret* the MRI and in both cases, the plaintiff explained how the MRI could undermine the reasoning of either the ALJ or an expert the ALJ relied on. Neither of those things applies in this case. The ALJ didn't interpret the MRI; she concluded that other evidence showed that Bolin's back pain wasn't disabling, regardless what the MRI meant. And Bolin doesn't explain how the MRI could undermine the reasoning of the ALJ, Shaw, or Korshidi.

The commissioner says that the MRI wouldn't make any difference to the opinions of the consulting physicians because they, like the ALJ, considered Bolin's back pain but found that it wasn't disabling because the record evidence demonstrated that whatever back pain Bolin had didn't significantly impair her functioning. Dkt. 20, at 8 (citing R. 69–70); *see also Keys v. Berryhill*, 679 F. App'x 477, 480–81 (7th Cir. 2017) (rejecting argument that ALJ was required to obtain new expert opinion to interpret MRI when the plaintiff had "not provided any evidence that the reports would have changed the doctors' opinions" and "did not explain how the findings on those reports undermine the uncontroverted opinions of" the medical experts). Bolin doesn't meaningfully respond to this argument. She says instead that symptoms of facet arthrosis "could have" affected her ability to do light work. Dkt. 21, at 3. But what limitations a condition "could" impose aren't relevant to a disability analysis; it's well established that a diagnosis is not a disability in itself. *See Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004); *Salvino v. Saul*, No. 19-cv-422-jdp, 2020 WL 467902, at *2–3 (W.D. Wis. Jan. 29, 2020). The question is what limitations a condition actually causes. *Id.*

In this case, Bolin doesn't cite evidence that her back pain became worse or that it more severely limited her abilities during the time period that the consulting physicians didn't consider. So the court isn't persuaded that the ALJ was required to obtain the assistance of a new expert to determine the significance of the MRI.

### 2. UARS and COPD diagnoses

Bolin received a diagnosis for COPD in January 2017 and for UARS in September 2017. The consulting physicians didn't consider either condition. The ALJ discussed COPD in her decision, finding that it wasn't a severe impairment because it was well managed with inhalers, which Bolin said she rarely needed. R. 18. The ALJ didn't discuss Bolin's UARS. Bolin says

that both diagnoses are important because: (1) the consulting physicians concluded that Bolin's alleged symptoms of fatigue were only "partially consistent" with the record; (2) both UARS and COPD can cause fatigue, so they provide objective support for her allegations that she is "always tired," runs out of energy quickly, and needs to lie down for most of the day. Dkt. 19, at 9–10. So she says that an expert opinion was needed to consider her fatigue allegations in light of her new diagnoses.

The ALJ concluded that COPD was not a severe impairment, not because Bolin lacked expert evidence, but because the record showed that Bolin was able to control her symptoms. Bolin doesn't challenge the ALJ's conclusion, and she doesn't contend that the ALJ needed an expert to evaluate the evidence she relied on. So an expert opinion wouldn't have been helpful to evaluate Bolin's COPD.

It's also not clear how a UARS diagnosis would have made a difference to the consulting physicians' opinions. Again, Bolin says that UARS "could have" caused her fatigue. Dkt. 19, at 10. But she doesn't cite any statement from a physician or any other evidence from the record suggesting that UARS *did* cause her fatigue. That dooms her argument. *See Best v. Berryhill,* 730 F. App'x 380, 382 (7th Cir. 2018) ("There is no error when there is no doctor's opinion contained in the record that indicated greater limitations than those found by the ALJ." (internal quotation marks and alterations omitted)). The consulting physicians couldn't fill that gap in the record because their job is to review the record, not to treat or examine the claimant. In any event, the consulting physicians were already aware that Bolin suffered from fibromyalgia, which, as Bolin acknowledges, can cause fatigue as well. *Id.* (citing R. 22). So the consulting physicians didn't discount Bolin's allegations of fatigue for lack of a diagnosis that could explain the symptom. Rather, they concluded that other evidence in the record

5

undermined her allegations. So the court isn't persuaded that the ALJ erred by failing to address the UARS diagnosis or by failing to obtain an expert opinion to consider the UARS and COPD diagnoses.

### 3. Seizure and medication reduction

Bolin cites a 2017 medical record noting that she suffered a seizure several months earlier, and, as a result, her nurse practitioner, Katie Novak, reduced her dosage for Tramadol, a medication that Bolin took for pain and that Novak believed was the cause of the seizure. Dkt. 19, at 10–11 (citing R. 599). Bolin contends that a medical expert should have considered how both the seizure and the reduced dosage of medication affected Bolin's ability to work.

The court isn't persuaded that either issue required expert review. As for the seizure, Bolin says that she suffered only one, and she cites no evidence that she is likely to have any more in the future. By her own assertion, the seizure was the result of a higher dosage of medication, which has been reduced. So the seizure isn't significant new evidence.

As for the reduction in the dosage of Tramadol, the ALJ cites medical records stating that Bolin's pain was "well-controlled" even with the lower dose. R. 601. In her reply brief, Bolin cites records noting complaints of pain despite Tramadol. Dkt. 21, at 6 (citing R. 455, 469, 482, 503, and 509). But all of those records predate the 2017 dosage reduction. So regardless what those records show about the effectiveness of Tramadol, they don't show that Bolin's pain worsened as the result of the reduction. And if there is no evidence that Bolin's pain worsened after 2016, then the reduction in medication isn't "significant" new evidence requiring review by the consulting physicians. *See Stage*, 812 F.3d at 1125.

**4. Depression and anxiety**

Bolin says that there was new evidence that she suffered from depression and anxiety in 2017. But psychological consultants Beth Jennings and Esther Lefevre considered Bolin's depression and anxiety in their opinions, and the ALJ found that depressive disorder and generalized anxiety disorder were both severe impairments. So the various records that Bolin cites showing that she continued to report depression and anxiety in 2017 and later isn't significant new evidence.

The only evidence Bolin cites of worsening depression and anxiety is a May 2018 emergency room visit for "acute intoxication [and] suicidal ideation." R. 687. The ALJ considered Bolin's hospitalization in her decision but didn't give it weight for three reasons: (1) the hospitalization was related to alcohol use (which Bolin said she had given up); (2) Bolin "generally does not report suicidal ideation"; and (3) and her mental health examinations were otherwise normal. R. 28.

Bolin doesn't challenge any of the ALJ's reasons. Instead, she says that she continued suffering from depression and anxiety after May 2018. But that's not the issue. Again, the question isn't whether Bolin was depressed or anxious; the ALJ found that she was. The question is whether Bolin has presented evidence that her depression and anxiety worsened to the point that a new expert opinion was needed to evaluate the new evidence. Bolin hasn't done that, so her challenge of the ALJ's handling of this issue fails.

**B. Mental limitations**

The RFC states the following about Bolin's mental restrictions:

> The work should involve short and simple instructions. The claimant is better suited for work with a regular set of job tasks, as well as a regular set of job expectations that do not change from day-to-day, so as a result of that, the work should involve routine,

7

>repetitive tasks and simple decision making. The work should involve no public interaction.

Dkt. 17, at 20. Bolin contends that the RFC doesn't adequately reflect her mental limitations for three reasons: (1) the ALJ gave "great weight" to the opinions of the psychological consultants, but she didn't incorporate their findings that Bolin was moderately limited in multiple areas related to concentration, persistence and pace; (2) the ALJ failed to address evidence that Bolin would be off-task more than 15 percent of the work day and excessively absent from work; and (3) the ALJ failed to address evidence that Bolin was unable to get along with supervisors and co-workers.

### 1. Opinion evidence on concentration, persistence, and pace

This argument relates to a worksheet that psychological consultants Lefevre and Jennings filled out as part of an assessment of Bolin's mental residual functional capacity. As noted in *Varga v. Colvin*, 794 F.3d 809, 811 (7th Cir. 2015), the worksheet the consultants used has different sections. In one section, the consultant is asked to rate the claimant's functioning in different, predetermined categories, with ratings such as "not significantly limited," "moderately limited," and "markedly limited." R. 70–71. After each group of functional categories, consultants are directed to "explain in narrative form" the limitations they chose. *Id.* The directions for the worksheet explain that the ratings "help determine the individual's ability to perform sustain worked activities." R. 70. But "the actual mental residual functional capacity assessment is recorded in the narrative discussion(s)." *Id.* In other words, the narrative is meant to translate the ratings into specific functional limitations.

In this case, both consultants found that Bolin was "moderately limited" in the following categories: maintaining attention and concentration for extended periods; completing a normal workday and workweek without interruptions from psychologically based symptoms

8

and performing at a consistent pace without an unreasonable number and length of rest periods; and sustaining an ordinary routine without special supervision. R. 71, 105. In the narrative portion of the worksheets, the consultants wrote:

> Claimant would be able to carry out very short and simple instructions but have increasing difficulty with detailed instructions
>
> Claimant would be able to maintain attention/concentration for extended periods and sustain ordinary routine with minor supervision and minor interruptions

*Id.*

Bolin contends that the RFC doesn't incorporate the consultants' "moderately limited" ratings in the categories related to concentration, persistence, and pace (CPP). She cites cases in which the court of appeals has held that restrictions for "simple," "routine," and "repetitive" don't adequately encapsulate a restriction for "moderation limitations in concentration, persistence and pace." *See, e.g., O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

The consultants in this case didn't use the phrase "moderate limitations in concentration, persistence, and pace." But even if they had, Bolin's argument would fail. As this court has explained numerous times, neither *O'Connor-Spinner* nor any Seventh Circuit case has held that the ALJ must use specific language in the RFC to reflect limitations related to concentration, persistence, and pace.[2] Rather, the question is whether the RFC "incorporate[s] all of the claimant's limitations supported by the medical record." *Crump v.*

---

[2] *See, e.g., Hamsing v. Saul*, No. 20-cv-1-jdp, 2020 WL 5505657, at *2 (W.D. Wis. Sept. 11, 2020); *Martin v. Saul*, No. 19-cv-795-jdp, 2020 WL 2847526, at *2 (W.D. Wis. June 2, 2020); *Recha v. Saul*, No. 19-cv-317-jdp, 2019 WL 7343420, at *3 (W.D. Wis. Dec. 31, 2019); *Gloege v. Saul*, No. 19-cv-250-jdp, 2019 WL 6001659, at *2–3 (W.D. Wis. Nov. 14, 2019); *Rabitoy v. Berryhill*, No. 17-cv-495-jdp, 2018 WL 1010219, at *2 (W.D. Wis. Feb. 21, 2018); *Rossenbach v. Colvin*, No. 13-cv-435-bbc, 2014 WL 1729096, at *2 (W.D. Wis. Apr. 30, 2014).

*Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (internal quotation marks omitted). That is a case-specific inquiry that requires an examination of the evidence. "[T]he court must do more than simply look at the words used in the assessment." *Zeatlow v. Berryhill*, No. 18-cv-570-jdp, 2019 WL 494625, at *1 (W.D. Wis. Feb. 8, 2019).

Bolin's argument is based on the faulty assumption that "moderate limitations in concentration, persistence, and pace" means the same thing in all cases. But CPP "is simply a general category that must be translated into particular limitations; the phrase does not necessarily communicate what a claimant can or cannot do. This is why the RFC does not say moderate limitations in concentration, persistence, or pace. That would mean nothing to a vocational expert (or to anyone else)." *Lindemann v. Saul*, No. 18-cv-932-jdp, 2019 WL 2865337, at *1 (W.D. Wis. July 2, 2019) (internal quotation marks, citations, and alterations omitted). Not surprisingly, Bolin doesn't cite any cases in which an ALJ used the phrase "moderate limitations in concentration, persistence, and pace" in the RFC.

In this case, the consultants translated the ratings for the general categories related to concentration, persistence, and pace into specific restrictions in the narrative, just as the worksheet instructed them to do. And then the ALJ incorporated the restrictions in the narrative into the RFC. Bolin doesn't contend that the RFC is missing any of the restrictions in the consultants' narrative, and she doesn't identify any specific restrictions that the ALJ should have included in the RFC but didn't. Rather, her entire argument is based on a view that the restrictions in the RFC are categorically inadequate to address limitations in concentration, persistence, and pace. This court has repeatedly rejected that view. *See Martin v. Saul*, No. 19-cv-795-jdp, 2020 WL 2847526, at *1–2 (W.D. Wis. June 2, 2020) ("[The

plaintiff didn't] identify any limitations supported by the record that were missing from the RFC, so she is not entitled to relief." (internal quotation marks and alterations omitted)).

Bolin doesn't explicitly put it this way, but perhaps she means to argue that the consultants' narrative didn't adequately translate their categorical ratings, so the ALJ should've included additional restrictions or explained why she declined to do so. *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) (ALJ must account for consultants' more general ratings on the worksheet if they aren't translated in the narrative). But other than invoking the *O'Connor-Spinner* line of cases, Bolin offers no reason why the consultants' narrative is inadequate. And Bolin identifies no additional restrictions that would better translate the consultants' ratings. Bolin has forfeited any further argument based on an alleged failure of the ALJ or the consultants to incorporate restrictions implied by the consultants' ratings but not included in the narrative.

### 2. Evidence that Bolin would be off-task and excessively absent

Bolin contends that the ALJ erred by failing to discuss the vocational expert's testimony that "an individual who was 15 percent off-task or more during the workday would be unable to work," and that "employers would not tolerate more than 7 unexcused absences a year, with only one each month." Dkt. 19, at 14, (citing R. 57). Bolin cites *Crump v. Saul*, 932 F.3d 567 (7th Cir. 2019), and *Winsted v. Berryhill*, 923 F.3d 472 (7th Cir. 2019), for the proposition that "an ALJ errs when she solicits favorable [vocational expert] testimony about off-task time or absences and does not address that testimony in the decision." Dkt. 19, at 14.

Bolin's reading of *Crump* and *Winsted* isn't persuasive. The rule at the heart of both cases is a basic one: the ALJ may not disregard substantial evidence that is supported by the record. *See Crump*, 932 F.3d at 570–71 (ALJ erred because the hypothetical to the vocational

11

expert and the RFC "did not account for Crump's CPP limitations"); *Winsted*, 923 F.3d at 476 ("[W]hen an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the [vocational expert] must account for these limitations."). A hypothetical is not itself evidence; it is simply a question that the ALJ asks the vocational expert before the ALJ has determined what the evidence is. So too, the vocational expert's answers that Bolin cites aren't evidence of her limitations. Bolin doesn't contend that the vocational expert reviewed her medical records or had any basis for determining what her limitations were. Rather, the vocational expert's cited testimony was simply a description of what is considered acceptable employee performance in the national economy, based on assumptions provided by the ALJ.

Again, the ultimate question isn't whether the ALJ accounted for all of the hypotheticals provided to the vocational expert; it is whether the ALJ reasonably accounted for all the evidence of the claimant's limitations. In this case, Bolin doesn't discuss any evidence related to absences and being off-task that the ALJ disregarded. She says that Katie Novak, her nurse practitioner, opined that Bolin would be off-task 25 percent of the time and would be absent more than four times a month. But the ALJ considered Novak's opinion and gave it little weight for multiple reasons, R. 24–25, none of which Bolin challenges. Bolin also cites her own statement from her administrative appeal in December 2016 in which she said that on three occasions she had to "leave the room" at her job because of an "emotional break-down" and that she had to "call in" an unspecified number of times because she "couldn't handle things." R. 306. But she doesn't explain how either of those statements shows that she would be consistently off-task more than 15 percent of the time or miss more than one day a month because of her mental limitations. Finally, Bolin includes a string citation to numerous medical

12

records that she says are evidence that she would be "excessively off-task." Dkt. 19, at 14. But she neither identifies what those records are nor explains how they support her claim, so she has forfeited any argument based on those records.

The bottom line is that Bolin hasn't shown that the ALJ disregarded any significant evidence related to being off-task or absent from her work.

### 3. Evidence of Bolin's limitations in interacting with co-workers and supervisors

#### a. Opinions of psychological consultants

Like the argument on concentration, persistence, pace, this argument relates to the worksheets prepared by the psychological consultants. Both consultants rated Bolin as "moderately limited" in two abilities related to "social interaction": accepting instructions and responding appropriately to criticism from supervisors; and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes." R. 71–72 and 105–06. In the narrative portion of the worksheet, both consultants wrote, "Claimant would be able to get along with and respond to supervisors and co-workers with minor conflict." R. 72 and R. 106. Bolin contends that the ALJ erred by failing to include any restrictions in the RFC related to interaction with co-workers or supervisors.

Bolin doesn't contend that "minor conflict" with co-workers or supervisors would require a special restriction in the RFC. So the key question isn't whether the ALJ adequately accounted for what the consultants ultimately found in their narrative, but whether the consultants' narrative is consistent with their categorical ratings. In other words, can a finding that Bolin would have only "minor conflict" with co-workers and supervisors be reconciled with

a rating that Bolin was "moderately limited" in responding appropriately to supervisors and getting along with co-workers?

In arguing that it can't, Bolin relies on *DeCamp*, in which the court stated that "an ALJ may rely on a narrative explanation, [but] the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the PRT and MRFC forms." 916 F.3d at 676. The "check-box sections" for the worksheet mentioned in *DeCamp* are similar to the ratings discussed in this opinion for general categories of limitations. But *DeCamp* isn't on point. The problem in *DeCamp* was that the narrative section simply didn't account for some of the more general ratings. That's not what happened in this case. The ALJ and the consultants didn't ignore the ratings for the general categories; rather, the consultants translated the ratings into a finding in the narrative that Bolin would have only "minor conflict" with co-workers and supervisors.

Under *Varga*, "an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations." 794 F.3d 809, 816 (7th Cir. 2015). Bolin's view appears to be that "moderate" limitations are inherently inconsistent with a finding of no more than "minor" conflict. But she cites no authority for that view. The closest she comes is a quotation from *O'Connor-Spinner* that "even a moderate limitation on responding appropriately to supervisors *may* undermine seriously a claimant's ability to work." 627 F.3d at 621 (emphasis added). But "may" is not "must." The meaning of "moderate" is not precisely defined in the regulations. A recent definition states only that a "moderation limitation" means that "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. § Pt. 404, Subpt. P, App.

1, § 12.00(F)(2)(C). So how one consultant views a "moderate" limitation may be different from another.

As already noted, the worksheet used by the consultants in this case explains that the consultant's ratings "help determine the individual's ability to perform sustain worked activities," but "the actual mental residual functional capacity assessment is recorded in the narrative discussion(s)." R. 70. So under the terms of the worksheet itself, the consultants communicated their view in their narrative that whatever social limitations Bolin had, they would not cause more than minor conflict with supervisors and co-workers. The court does not see an inherent conflict between the different parts of the worksheet, so Bolin's argument on this issue fails.

### b. Opinion of psychiatrist Marcus Desmonde

Marcus Desmonde was a consulting psychiatrist who examined Bolin once. R. 25. Desmonde found that Bolin could "interact briefly" with co-workers and supervisors. R. 455–56. The ALJ said that she "assign[ed] little weight" to Desmonde's opinion for multiple reasons: (1) it relied "too much" on a one-time examination of Bolin; (2) Desmonde reviewed only one of Bolin's previous examinations; and (3) Desmonde's opinion that Bolin could interact briefly with co-workers and supervisors was inconsistent with medical records showing that she got along well with medical providers.

In her opening brief, Bolin challenges the ALJ's third reason only, saying that her interactions with her providers don't shed any light on her ability to get along with co-workers and supervisors because they are very different types of relationships. This is a fair point, but the commissioner says that Bolin is simply asking the court to reweigh the evidence, which isn't allowed. *See Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020). The court need not resolve

this particular point because Bolin says nothing about the ALJ's other reasons for rejecting Desmonde's opinion, which are themselves adequate to support the ALJ's decision. *See Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018) (upholding ALJ's determination even though some reasons weren't supported by the record); *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) (ALJ must "provide *some* evidence supporting her determination" (emphasis added)).

In her reply brief, Bolin cites *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003), for the proposition that the ALJ may not give more weight to the opinion of a non-examining psychiatrist, such as Lefevre and Jennings, than to an examining psychiatrist, such as Desmonde. But a party may not raise arguments for the first time in a reply brief. *See Brown v. Colvin*, 661 F. App'x 894, 895 (7th Cir. 2016). In any event, the court has considered and rejected this argument before. *See Cassens v. Saul*, No. 19-cv-912-jdp, 2020 WL 3316094, at *4 (W.D. Wis. June 18, 2020). In *Gudgel*, the court didn't hold that an ALJ must always give more weight to the opinions of examining medical providers. Rather, the problem in *Gudgel* was that the ALJ preferred the consultant's opinion without explaining why. That is not what happened in this case. Even in her reply brief, Bolin still doesn't challenge the ALJ's reason that Desmonde's opinion wasn't persuasive because Desmonde didn't review more of Bolin's records. So Bolin hasn't shown that the ALJ erred by declining to credit Desmonde's opinion.

## C. Subjective complaints

The court must uphold an ALJ's credibility determination unless it is "patently wrong." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). In this case, Bolin says that the ALJ didn't adequately evaluate her complaints of pain and her allegation that her ability to walk was limited. She raises several objections: (1) the ALJ may not discredit subjective complaints simply because they aren't supported by objective evidence; (2) the ALJ relied too heavily on

16

observations in medical records that Bolin walked with a "normal gait"; (3) the ALJ should have been persuaded by other evidence in the record that supported Bolin's allegations; and (4) the ALJ failed to discuss all the things that Bolin said that she couldn't do.

None of these objections require extended discussion. An ALJ is entitled to consider the lack of objective evidence supporting a claimant's subjective complaints. *See Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) ("In his assessment of Rice's credibility, the ALJ properly considered the degree to which the objective medical evidence supported the degree of severity of Rice's subjective complaints."). The lack of objective support can't be the *only* basis for discrediting the claimant, *see Adaire v. Colvin*, 778 F.3d 685, 687 (7th Cir. 2015), but the ALJ relied on multiple reasons in this case, including medical records showing that Bolin could do more than she said she could and that her pain was controlled with medication.

Bolin's second and third objections are simply requests for the court to reweigh the evidence. But as already discussed, that request is inconsistent with the appropriate standard of review. *See Peeters*, 975 F.3d at 641.

Finally, Bolin says that the ALJ should have more thoroughly considered her allegations about the limits in her activities of daily living. Specifically, she cites statements that she needed to take breaks when doing chores and required assistance from friends to complete tasks such as shopping. She admits that the ALJ acknowledged these statements, *see* R. 21, but she says that the ALJ should have specifically explained why those particular statements weren't credible. This argument overstates what the ALJ was required to do. The ALJ's determination "need not contain a complete written evaluation of every piece of evidence" to be adequate. *Summers v. Berryhill*, 864 F.3d 523, 529 (7th Cir. 2017); *see also Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012) ("[A]n ALJ's credibility findings need not specify which statements were

17

not credible."). The ALJ provided several reasons why she believed Bolin's subjective complaints weren't fully supported by the record. That was all she was required to do. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (ALJ's explanation is adequate if it "minimally articulates" the reasons for the decision).

### D. Conclusion

Bolin hasn't identified any errors by the ALJ that require a remand. The court will affirm the decision of the commissioner.

### ORDER

IT IS ORDERED that the decision of the commissioner is AFFIRMED and the February 18, 2021 oral argument is CANCELED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case.

Entered February 16, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge